## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ZHAOJIN DAVID KE,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **LIBERTY MUTUAL INSURANCE** | : | **No. 20-1591** |
| **COMPANY,** *et al.*, | : | |
| *Defendants* | : | |

### MEMORANDUM

PRATTER, J.                                                                     DECEMBER *14*, 2020

Frequently the three-party relationship of an insurer, an adjuster, and an insured is an uneasy one. So it is in this case.

Mr. Ke, proceeding *pro se*, is suing his insurer Liberty Mutual and claims adjuster, Michael Guess, following an investigation and settlement offer which Mr. Ke maintains is deficient. Liberty Mutual and Mr. Guess move to dismiss all counts against Mr. Guess and all but the breach of contract claim against Liberty Mutual. In turn, Mr. Ke has moved to compel certain discovery from the Defendants.

For the reasons that follow, the Court grants in part Defendants' motion to dismiss and grants in part Mr. Ke's motion to compel.

### BACKGROUND AND PROCEDURAL HISTORY

Mr. Ke owned a Honda Odyssey van which was insured by Liberty Mutual Insurance Company since August 2017.[1] Am. Compl. ¶ 9. Mr. Ke alleges that a Liberty Mutual salesperson represented to him on a phone call that he would get a "good repair" if his van ever was involved

---

[1] Although Mr. Ke alleges his van had less than 75,000 miles, he does not state the year, physical wear and tear, or other information about the vehicle that would help inform the actual value of the van. Nor does Mr. Ke allege a rough estimate for what he claims to be the actual cash value of his van. The Amended Complaint contains only the conclusory allegation that his van was worth more than Mr. Guess quoted to him.

in an accident.  This oral promise, along with a lower premium, convinced him to change his policy.  Am. Compl. ¶¶ 9-11.  The policy provides that Liberty Mutual's liability for loss is limited to the lesser of:  (1) the actual cash value of the damaged property or (2) the amount necessary to repair or replace the property with other property of like kind and quality.  Am. Compl. Ex. 1 (Liberty Mutual Insurance Policy).  Mr. Ke's policy carried a $500 deductible.  Ex. 1 at 2.

About a year after contracting with Liberty Mutual, Mr. Ke's vehicle was rear-ended.  The impact from this collision then caused Mr. Ke's van to strike the bumper of the car in front of him.  That day, Mr. Ke called Liberty Mutual's 1-800 number to open a claim.  He was directed to drive his van to Liberty Mutual's designated body shop, which estimated the repair would cost $3,389.  Am. Compl. ¶¶ 17, 18.

Michael Guess was the insurance adjuster assigned to value Mr. Ke's van following the accident.  Am. Compl. ¶ 19.  Mr. Guess advised Mr. Ke that his van was a "total loss" because the cost of the repairs exceeded the actual cash value of the van.  Am. Compl. ¶ 23.  Based on Mr. Guess's valuation, Liberty Mutual offered to pay Mr. Ke $2,500.  This apparently represented the actual cash value of the damaged van—$3,000—minus the $500 deductible.  Mr. Ke did not accept the offer.  Rather, he disputed the value of the van and insisted that it be restored in accordance with the oral promise he believed to have been made to him by the Liberty Mutual salesperson.  Am. Compl. ¶¶ 25-26.  Mr. Ke alleges that Mr. Guess failed to investigate his claim and refused to personally inspect the van.  Am. Compl. ¶20.  After rejecting Liberty Mutual's offer, Mr. Ke alleges he subsequently repeatedly requested that Mr. Guess arrange for his van to be repaired or pay him $3,000.  Mr. Guess allegedly did not respond to Mr. Ke's repeated phone calls and messages.  Am. Compl. ¶¶ 26-28.

Mr. Ke filed this action initially in the Court of Common Pleas. After Defendants removed the matter to federal court, Mr. Ke amended his complaint. The Amended Complaint asserts ten causes of action: Count I alleges breach of contract against Liberty Mutual. Count II alleges statutory bad faith by an insurer against an insured, in violation of 42 Pa. C.S. § 8371. Counts III asserts "negligent failure to investigate" against both Defendants. Count IV is for unjust enrichment against Liberty Mutual. Counts V through VII assert various violations of 73 Pa. Stat. Ann. § 201 *et seq*, Pennsylvania's Unfair Trade Practices and Consumer Protection Law, against both Defendants. Count VIII, IX, and X allege negligence, gross negligence, and recklessness, respectively, against both Defendants. Mr. Ke seeks damages in excess of $300,000, as well as treble and punitive damages, which are available for statutory bad faith.

Pending are two motions: Defendants move under Rule 12(b)(6) to dismiss Counts II-X for failure to state a claim. Defendants are not moving to dismiss the breach of contract claim against Liberty Mutual. Mr. Ke moves to compel production of certain discovery requests.

LEGAL STANDARDS

**I.    Motion to Dismiss**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. To provide defendants with fair notice, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Third Circuit instructs the reviewing court to conduct a two-part analysis. First, any legal conclusions are separated from the well-pleaded factual allegations and disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court determines whether the facts alleged establish a plausible claim for relief. *Id.* at 211.

To that end, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* at 210. If the court can only infer "the mere possibility of misconduct," the complaint has failed to show an entitlement to relief. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Because Mr. Ke is proceeding *pro se*, the Court must liberally construe the allegations in the Amended Complaint. *Higgs v. Atty. Gen*, 655 F.3d 333, 339 (3d Cir. 2011). But the Court need not ignore or discount reality. Nor must the Court "accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000).

## II.    Motion to Compel

Rule 26(b)(1) provides that parties may obtain discovery regarding any nonprivileged matter that is both relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The party moving to compel discovery under Federal Rule of Civil Procedure 37 bears the initial burden of demonstrating the relevance of the requested information. *First Niagara Risk Mgmt., Inc. v. Folino*, 317 F.R.D. 23, 25 (E.D. Pa. 2016). If this initial showing is made, the resisting party can oppose by showing that the material requested is not relevant under Rule 26 or that the burdens of production outweigh the "ordinary presumption" in favor of disclosure. *Id.*

## DISCUSSION

### I.    Motion to Dismiss

#### A. Count II: Statutory Bad Faith Against Liberty Mutual

Pennsylvania law does not recognize a common law remedy for a claim of bad faith against an insurer. Instead, the Commonwealth has created a statutory regime which permits an insured to recover punitive damages, among other things, after a finding of bad faith. 42 Pa. C.S. 8371. To recover on a bad faith action against an insurer, a plaintiff must establish by clear and

4

convincing evidence both "(1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis." *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017); 42 Pa. C. S. § 8371.

A plaintiff must plead specific facts as evidence of bad faith. It is not enough to claim that the insurer acted unfairly. *Toner v. GEICO Ins. Co.*, 262 F. Supp. 3d 200, 208 (E.D. Pa. 2017). The Third Circuit Court of Appeals has expressed that "mere negligence or bad judgment is not bad faith." *Canfield v. Amica Mut. Ins. Co.*, No. CV 20-2794, 2020 WL 5878261, at \*4 (E.D. Pa. Oct. 2, 2020) (quoting *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005)).

At its core, Mr. Ke's argument is that (1) Liberty Mutual failed to investigate his claim and (2) failed to pay the value to which Mr. Ke felt he was entitled. But the pleadings in the Amended Complaint rob the bad faith claim of its plausibility.  Mr. Ke admits that Liberty Mutual investigated his claim, given that he was instructed by Liberty Mutual to bring his car to the designated auto body shop for inspection and damage assessment. He was promptly provided with the damages assessment. Mr. Ke does not allege that the quoted repair cost was incorrect or that the inspection was somehow faulty.

A normal dispute between an insurer and an insured is not enough to state a claim of bad faith. *Canfield*, 2020 WL 5878261, at \*4 (plaintiff must do more than call the offer "low-ball"); *McDonough v. State Farm Fire & Cas. Co.*, 365 F. Supp. 3d 552, 558 (E.D. Pa. 2019) (conclusory statements that insurer withheld payment of benefits, failed to make a reasonable offer of settlement, failed to engage in good faith negotiations, and failed to perform an adequate investigation were not sufficient to plead statutory bad faith). Like the plaintiff in *Canfield*, Mr. Ke does not allege that Liberty Mutual denied his claim. Rather, he challenges the amount Liberty Mutual offered to pay based on what he believed to be the value of his van. But Mr. Ke does not

plead any facts other than his say so to dispute the value of his van or show that the valuation was unreasonable. An insurer's failure to honor its insured's subjective value of his claim does not—without more—give rise to a bad faith claim. *Johnson v. Progressive Ins. Co.*, 987 A.2d 781, 785 (Pa. Super. Ct. 2009).

The remainder of Mr. Ke's allegations are irrelevant to whether Liberty Mutual acted in bad faith. For example, because the policy settled damages regardless of fault, there was no need for Liberty Mutual to investigate who caused the accident. Nor was there a need for Mr. Guess to personally inspect then van given the estimate provided by the certified repair shop—which Mr. Ke does not contend was improper.

Accordingly, Count II is dismissed as to Liberty Mutual. However, because courts should freely allow leave to amend a complaint unless amendment would be futile, Fed. R. Civ. P. 15(a)(2), Mr. Ke may amend his statutory bad faith claim to the extent he can allege facts to state a plausible claim.

### B. Common Law Bad Faith

Defendants also move to dismiss Count III alleging common law bad faith against Liberty Mutual and Mr. Guess—the insurance adjuster.

*First*, the Commonwealth of Pennsylvania does not recognize a common law tort of bad faith as against an insurer. *See, e.g.*, *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 364 (E.D. Pa. 2009) ("[N]o common law tort remedy exists for bad faith by an insurer" in Pennsylvania); *Hanover Ins. Co. v. Ryan*, 619 F. Supp. 2d 127, 140 (E.D. Pa. 2007) (same). Both courts within this Circuit and state courts have held that because the common law tort sounds in contract, it is subsumed within a breach of contract claim. *Tubman v. USAA Cas. Ins. Co.*, 943 F. Supp. 2d 525, 529 (E.D. Pa. 2013) (collecting cases).

So, Mr. Ke has two options for asserting distinct "bad faith" claims against Liberty Mutual. He can bring claim contractual breach of the insurance policy and statutory bad faith under § 8371. He has done just that in Counts I and II. Because the common law claim in Count III against Liberty Mutual is not independently cognizable, the Court grants Liberty Mutual's motion to dismiss Count III with prejudice.

*Second*, it is well settled within this Circuit that Pennsylvania law does not support a bad faith tort claim against a claims adjuster. *See, e.g., Mattei*, 2019 WL 78957, at \*4 (E.D. Pa. Jan. 2, 2019) ("Plaintiff cannot state a common law bad faith claim against [the insurance adjuster] under Pennsylvania law."); *Peer v. Minn. Mut. Fire & Cas. Co.*, No. CIV. A. 93-2338, 1993 WL 533283, at \*6 (E.D. Pa. Dec. 23, 1993) ("There is no colorable ground under Pennsylvania law supporting plaintiff's claims of punitive damages for bad faith conduct" asserted against insurance adjusters).

Likewise, a bad faith claim based in contract is not cognizable against an adjuster. The Third Circuit Court of Appeals has expressed that the common law bad faith claim is properly a contractual claim arising from the breach of the contractual duty of good faith and fair dealing. *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 497 (3d Cir. 2015). But Pennsylvania does not recognize liability for an insurance adjuster to an insured on a breach of contract. *Mattei v. Liberty Mut. Ins. Corp.*, No. CV 18-4643, 2019 WL 78957, at \*4 (E.D. Pa. Jan. 2, 2019) (citing *Hudock v. Donegal Mut. Ins. Co.*, 264 A.2d 668, 672 (Pa. 1970)).

Accordingly, Count III is dismissed with prejudice as to Mr. Guess too.

## C. Count IV for Unjust Enrichment against Liberty Mutual

Liberty Mutual moves to dismiss the unjust enrichment claim because an express and valid agreement between the parties exists which governs the insurance dispute. The parties do not

7

dispute that Mr. Ke purchased a policy with collision coverage. "The quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Power Restoration Int'l, Inc. v. Pepsico, Inc.*, No. CIV.A. 12-1922, 2013 WL 5636618, at *6 (E.D. Pa. Oct. 11, 2013) (citing *Schott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 448 (Pa. 1969)). A party, however, may plead unjust enrichment if "there is a dispute about the existence or validity of the contract in question." *Id.*

At this early stage of the proceedings, Defendants are not moving to dismiss the breach of contract (Count I). The dispute rather stems from the interpretation of the relevant provisions and whether Liberty Mutual honored its contractual obligations under the policy. But because it is not clear that Defendants will later contest the validity of the insurance policy, the Court will deny Defendants' motion to dismiss Count IV at this time.

### D. Counts V, VI, and VII for violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL)

Defendants move to dismiss Counts V, VI, and VII against both Liberty Mutual and Mr. Guess on the grounds that Mr. Ke's claims are not actionable under the UTPCPL. The UTPCPL provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by . . . this act are hereby declared unlawful." 73 Pa. Stat. Ann. § 201-3. The Act defines 21 such methods or acts or practices. To that end, the UTPCPL provides a private cause of action for a consumer who purchases "goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property" as a result of a seller's unfair or deceptive conduct. *Id.* § 201-9.2.

#### i. Count V—Violation of § 201-2(4)(iv)

Mr. Ke's fifth cause of action is based on § 201-2(4)(iv) of the UTPCPL which prohibits the use of "deceptive representations or designations of geographic origin in connection with goods

8

or services."   The Amended Complaint does not allege that Liberty Mutual misrepresented anything having to do with "geographic origin" of the insurance policy.   Nor is it entirely clear how such a claim could ever be stated in connection with an insurance contract.   Section § 201-2(4)(iv) seems to address the origin of products rather than a service (i.e., affixing a "Made in the USA" label when the good was produced elsewhere).

Because the Amended Complaint does not state any operative facts to plead a violation of Subsection § 201-2(4)(iv), the Court dismisses Count V with prejudice as against both Defendants.

### ii.    Count VI—Violation of § 201-2(4)(xiv) against Liberty Mutual

Mr. Ke's sixth cause of action is based on §201-2(4)(xiv) of the UTPCPL for failure "to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made."   Subsection (xiv) is the only provision of the act which deals specifically with contractual obligations.   Construed liberally, Count VI alleges two such failures to comply with the guarantees supposedly promised by Defendants.

*First*, the Amended Complaint asserts that Defendants violated the UTPCPL when Liberty Mutual's sales representative promised Mr. Ke a lower premium and full restoration of his vehicle were it to be damaged due to an accident.   Am. Compl. ¶ 144.   However, this alleged promise to restore the van is not cognizable under § 201-2(4)(xiv).   Mr. Ke alleges that this misrepresentation intended to solicit his business was made orally over the telephone.   Am. Compl. ¶ 9.[2]   The subsection covers failure to abide by the terms of any *written* guarantee or warranty.   Mr. Ke does not allege that the salesperson memorialized the alleged promise in writing.   So, this allegation cannot be the basis of Count VI.

---

[2]    Mr. Ke alleges: "In August 2017, a Liberty Mutual's salesperson named Jeffery Howard called and asked plaintiff to switch to Liberty Mutual, promising a lower premium and a good repair if his van got into an accident and was damaged as long as plaintiff bought full insurance."

*Second*, Mr. Ke alleges that Liberty Mutual failed to abide by the terms of its own collision coverage provision. Collision coverage is an add-on to the general policy that "pays the cost of repairing *or* replacing" a vehicle damaged in an accident, minus the amount of the deductible. Am. Compl. Ex. 1 (Liberty Mutual Auto Insurance Policy). The policy's limit of liability for any loss is the lesser of the "actual cash value of the . . . damaged property" or "amount necessary to repair or replace the property with other property of like kind and quality." Am. Compl. Ex. 1 (Liberty Mutual Auto Insurance Policy) at 9-10. The parties do not dispute that Mr. Ke purchased collision coverage. In a conclusory allegation, Mr. Ke asserts that the value of his van was worth more than the amount Liberty Mutual and Mr. Guess offered to settle. Am. Compl. ¶¶ 158-59. So, argues Mr. Ke, Liberty Mutual failed to honor its promise to pay the cost of repairing his vehicle.

Defendants move to dismiss this UTPCPL claim because it concerns the handling of an insurance claim, rather than the sale of an insurance policy. Indeed, Mr. Ke concedes this point. Both Courts within this Circuit and Pennsylvania state courts have repeatedly held that the UTPCPL is limited to challenges arising from the formation of an insurance contract. *See, e.g.*, *Neri v. State Farm Fire & Cas. Co.*, No. CV 19-0355, 2019 WL 3821538, at *8 (E.D. Pa. Aug. 13, 2019); *Kelly v. Progressive Advanced Ins. Co.*, 159 F. Supp. 3d 562, 564 (E.D. Pa. 2016); *Wenk v. State Farm Fire & Cas. Co.*, 228 A.3d 540, 550 (Pa. Super. Ct. 2020). This is because complaints relating to an insurer's handling of the claim are properly brought under § 8371 for statutory bad faith. *See supra* Section I.A.

Because the Amended Complaint essentially alleges that Liberty Mutual failed to pay Mr. Ke the amount he alleges was promised under his policy, the Court will grant Liberty Mutual's motion to dismiss Count VI with prejudice.

10

### iii.    Count VII—Violation of § 201-2(4)(xxi) against Liberty Mutual

Count VII alleges that Defendants' conduct violated the catch-all provision of the UTPCPL. The catch-all provision prohibits "any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 Pa. Stat. Ann. § 201-2(4)(xxi). To state a claim under the UTPCPL, a plaintiff may plead the elements of common-law fraud or allege deceptive conduct. *Clapps v. State Farm Ins. Cos.*, 447 F. Supp. 3d 293, 301 (E.D. Pa. 2020). Where, as here, Mr. Ke has not alleged fraudulent conduct, the viability of his UTPCPL claims hinges on whether he has alleged deceptive conduct. He must allege facts showing a deceptive act, that he justifiably relied on the defendant's wrongful conduct or representation in purchasing the product, and that suffered some harm as a result of that reliance. *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 208 (Pa. 2007); *Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503, 510–11 (E.D. Pa. 2010).

Here, Mr. Ke repeats the same allegations as in Counts V and VI. Construing the Amended Complaint liberally, Mr. Ke alleged that Liberty Mutual's salesman misrepresented the benefits of the general policy and that he relied on this solicitation in purchasing the policy.[3]  Mr. Ke thus alleges that Liberty Mutual's deception caused him to believe that, if he purchased collision coverage, he would be entitled to the value of his van it its pre-damaged condition. He claims that he suffered a loss when Liberty Mutual offered him $2,500 for the totaled van, rather than repair or replace his van. Allegations that relate to "alleged misconduct in the characterization, solicitation and sale of the insurance policy are properly addressed under the UTPCPL." *Doherty v. Allstate Indem. Co.*, No. CV 15-05165, 2016 WL 5390638, at *5 (E.D. Pa. Sept. 27, 2016). At

---

[3]     At other times in the Amended Complaint, Mr. Ke describes the representation as "a lower premium and a good repair." Am. Compl. ¶ 9.

11

this stage, Mr. Ke has pled enough facts to state a claim under the catch-all provision against Liberty Mutual. So Liberty Mutual's motion to dismiss Count VII is denied.

### iv.    Counts VI and VII against Mr. Guess

Mr. Ke alleges that Mr. Guess violated the UTPCPL by misrepresenting that his van was totaled and refusing to investigate the claim. As a threshold matter, Defendants dispute that a UTPCPL claim is cognizable against an insurance adjuster.

This Court has been unsuccessful in locating a single case in federal court where a UTPCPL claim against the insurance adjuster has survived the motion to dismiss stage. Indeed, fellow district courts have engaged in the same Sisyphean task only to turn up similarly empty-handed. *Horne v. Progressive Advanced Ins. Co.*, No. CIV.A. 15-1029, 2015 WL 1875970, at *2 (E.D. Pa. Apr. 24, 2015). Regardless of whether a claim under the UTPCPL is cognizable against Mr. Guess,[4] there are a few stumbling blocks that will prevent Mr. Ke's claims against Mr. Guess

---

[4]      Neither the Third Circuit Court of Appeals nor the Pennsylvania Supreme Court has yet to rule on whether this type of claim is cognizable against an insurance adjuster. Most recently, the Pennsylvania Supreme Court in *Toy v. Metropolitan Life Ins. Co.* did not limit the scope of potential defendants in a UTPCPL claim. 928 A.2d 186 (Pa. 2007).

    To the extent this Court has found that a UTPCPL claim against insurance adjusters is colorable under Pennsylvania law, it was in deciding whether to remand the matter. *Compare Ellis v. Liberty Mutual Ins. Co.*, No. 18-1032, 2018 WL 3594987 (E.D. Pa. July 26, 2018), *and Lautz v. State Farm Ins. Co.*, No. CV 19-2481, 2019 WL 6840716, at *3 (E.D. Pa. Dec. 16, 2019) (quoting *Kennedy v. Allstate Prop. & Cas. Ins. Co.*, No. 15-2221, 2015 WL 4111816, at *7 (E.D. Pa. July 8, 2015)), *with Kelly v. Progressive Advanced Ins. Co.*, 159 F. Supp. 3d 562, 564 (E.D. Pa. 2016). The standard of review on a motion to remand is different from the one the Court employs at the motion to dismiss stage. With the former, the Court determined whether joinder of the non-diverse insurance adjuster was fraudulent for purposes of defeating diversity jurisdiction. Accordingly, the Court needed to determine whether there was any "reasonable basis in fact or colorable ground supporting the claim against the joined defendant." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992). The Court did not evaluate whether plaintiff had successfully stated a claim and instead resolved all doubts in favor of remand. *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990).

from progressing. The first is a failure to allege standing.[5]  The second is a failure to plead misfeasance.

*First*, pleading justifiable reliance is an element under the private plaintiff standing provision of the UTPCPL. *Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 137 (3d Cir. 2012). The Third Circuit Court of Appeals has explicitly rejected the suggestion that a plaintiff enjoys a "presumption of reliance." *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 227 (3d Cir. 2008) (citing Pennsylvania authority).  Rather, a plaintiff must specify the conduct that constitutes deception, that he justifiably relied on such conduct, and that such reliance caused an ascertainable loss. *McDonough v. State Farm Fire & Cas. Co.*, 365 F. Supp. 3d 552, 562 (E.D. Pa. 2019) (internal quotation omitted).

Because Mr. Ke is proceeding *pro se*, the Court necessarily construes the Amended Complaint liberally.  But, it "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997) (internal quotations omitted). Here, Mr. Ke has not adequately alleged that he justifiably relied on Mr. Guess's deception.  Instead, he pleads that Mr. Guess misstated the value of his claim and failed to investigate his claim.  So doing, Mr. Guess allegedly failed to comply with the written guarantees of collision coverage (Count VI) and engaged in generally deceptive conduct (Count VII).

At least one other court in this Circuit has agreed that a plaintiff cannot justifiably rely on the way in which a claim is handled. *Smith v. State Farm Mut. Auto. Ins. Co.*, No. CIV.A. 11-

---

[5]      "Standing" in this context is somewhat of a misnomer and does not refer to an element of constitutional standing.  Rather, a litigant's "standing" to pursue a claim under the private-plaintiff provision of the UTPCPL refers to statutory authority under the UTPCPL. *See I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, No. CV 18-5194, 2020 WL 6731109, at *21 (E.D. Pa. Nov. 13, 2020).

7589, 2012 WL 508445, at *4 (E.D. Pa. Feb. 16, 2012), *aff'd*, 506 F. App'x 133 (3d Cir. 2012). On "issues such as liability, damages, coverage or even procedure, [ ]claims . . are inherently and unavoidably arm's length and adversarial." *Id.* (quoting *Zappile v. Amex Assur. Co.*, 928 A.2d 251, 256 (Pa. Super. Ct. 2007)). Neither Mr. Ke's opposition papers nor the Amended Complaint discusses justifiable reliance on Mr. Guess's conduct. To the contrary, Mr. Ke alleges that he "vehemently disagreed" with Mr. Guess's offer to settle. Am. Compl. ¶ 159. He does not allege facts to suggest that he took any action in reliance on Mr. Guess's valuation of his claim, or alleged failure to investigate. Thus, Mr. Ke has not met the requirement of standing under the private-plaintiff provision.

*Second*, Mr. Ke fails to state a claim against Mr. Guess under the UTPCPL because the operative allegations arise from Mr. Guess's alleged refusal to settle the full amount of his claim. But a claim for failure to pay the full amount and for failure to investigate—both of which Mr. Ke allege here—are forms of nonactionable "nonfeasance" under the UTPCPL. "In Pennsylvania, only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the [UTPCPL]." *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 564-65 (3d Cir. 2008). Mr. Ke alleges that Mr. Guess "never even inspected the vehicle" before representing that it was totaled, Am. Compl. ¶¶ 156, 158, and that he failed to pay him what Mr. Ke subjectively believed to be the full worth of his van, *id.* ¶ 159. Mr. Ke is thus alleging that Mr. Guess failed to investigate.[6]

In dismissing Counts VI and VII against Mr. Guess, the Court does not hold that claims against insurance adjusters under the UTPCPL are categorically not cognizable in federal court.

---

[6]     Mr. Ke also alleges that Mr. Guess failed to investigate the driver who rear-ended Mr. Ke. Am. Compl. ¶¶ 92-94. A failure to investigate liability, however, is not part of determining the extent of damage sustained to Mr. Ke's van. And, in any event, such an alleged failure would not be cognizable under the UTPCPL because it is properly characterized as non-feasance.

Rather, the Court reminds parties that because the Act prevents deceptive business practices, a plaintiff must plead reliance and harm arising from the alleged deception.

### E. Counts VIII, IX, and X for Negligence, Gross Negligence, and Recklessness

Defendants move to dismiss Mr. Ke's final three causes of action as barred by the gist of the action and economic loss doctrines.  The application of the gist of the action doctrine renders Counts XII, IV, and X implausible.  Thus, the Court will dismiss these three counts with prejudice as against both Defendants.  The Court also finds that Defendants' alternate ground for dismissal— the economic loss doctrine—likewise bars these tort claims.

In Pennsylvania, the gist of the action doctrine screens out tort claims when the claim properly sounds in contract. *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 60 (Pa. 2014).  The doctrine precludes tort claims that (1) "aris[e] solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or where the success of which is wholly dependent on the terms of the contract." *Id.* at 67 (internal quotations omitted).  Whether the gist of the action doctrine precludes certain tort claims depends on "the nature of the duty alleged to have been breached." *Ohama v. Markowitz*, 434 F. Supp. 3d 303, 319 (E.D. Pa. 2020) (internal quotation omitted).

Recently, the Pennsylvania Supreme Court in *Bruno v. Erie Insurance Co.* distinguished an insurance claim that is fundamentally a contract action from one that is based on negligence. Although the Bruno's had an insurance policy with Erie, their claim was "predicated on the allegedly negligent actions taken by its agents . . . *while* they were performing Erie's contractual obligation to investigate the claim." *Bruno*, 106 A.3d at 70.  The court emphasized that the harm to the family was not caused by a breach of contractual duties.  Indeed, Erie had fulfilled its

contractual duties to pay for losses, inspections, and testing. Rather, the family suffered harm as a result of the company's negligent conduct, including their "false assurances" to the family. Because the basis of the negligence claim was conduct which exceeded the scope of defendants' contractual duties, the gist of the action doctrine did not bar the negligence claim.

At its core, Mr. Ke's negligence claim is based on Liberty Mutual's alleged failure to fulfill its obligations under the insurance policy and to settle with Mr. Ke for the sum he claims he is owed. But each of these allegations—the alleged failure to investigate, failure to personally inspect the van, and refusal to settle in good faith with a "reasonable amount of money"—"involves an obligation that Defendant[s] would not be bound to aside from the insurance agreement." *Simon v. First Liberty Ins. Corp.*, 225 F. Supp. 3d 319, 325 (E.D. Pa. 2016).

Mr. Ke has not pointed to a "broader social duty" outside of Defendants' obligations under the insurance contract. [7] Mr. Ke alleges that "regardless of a contractual relationship, defendants negligently performed their 'contractual obligations.'" To the extent he points to the duty of good care, there is an implied promise in every insurance policy that the insurer will exercise reasonable care in investigating a claim. *Id.* (quoting *Diamon v. Penn Mut. Fire Ins. Co.*, 372 A.2d 1218, 1226 (Pa. Super. Ct. 1977)). So, such a duty is already subsumed in Count I—his contractual cause of action—which Liberty Mutual is not moving to dismiss.

Nor does the Court find that this case is analogous to *Kennedy v. Allstate*, as Mr. Ke suggests. 2015 WL 4111816 (E.D. Pa. July 8, 2015). There, Judge O'Neill denied the insurer's motion to dismiss a negligence claim against the adjusters. Plaintiffs in *Kennedy* alleged that the adjusters made "false assurances" that plaintiffs' claims were being investigated. Based on these

---

[7]    Much of Mr. Ke's pleadings in these Counts are legal conclusions and arguments, which the Court need not consider. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotations omitted)

alleged misrepresentations, Judge O'Neill found that the negligence claim was not grounded in a breach of duty created by the insurance policy.  2015 WL 4111816, at *5.  Here, by contrast, Mr. Ke does not allege that Mr. Guess made false assurances while he was investigating the claim. Rather, Mr. Ke's allegations against Mr. Guess arise from the adjuster's determination that the van was totaled and offer of settlement under the applicable terms of Mr. Ke's policy.  To that end, the operative facts that underlie each of the ten causes of action (including breach of contract) are— with the occasional reordering or turn of phrase—identical.

As an alternative ground for dismissal, Defendants argue that the economic loss doctrine precludes these three tort claims.  This doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002).  It effectively screens out negligence causes of action that seek economic damages without alleging any physical injury or property damage. *McGuckin v. Allstate Fire & Cas. Ins. Co.*, 118 F. Supp. 3d 716, 719 (E.D. Pa. 2015) (quoting *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.*, 985 A.2d 840, 841 (Pa. 2009)).  Like the gist of the action doctrine, the economic loss doctrine bars tort claims that "essentially duplicate[] a breach of contract claim" and those which are "wholly dependent on the terms of a contract." *Id.*

Because Counts VIII, IX, and X fail to allege a claim of damage for personal injury or damage to property apart from the damaged van, the economic loss doctrine bars Mr. Ke's negligence claims.[8]  Where, as here, "the crux of [the] Plaintiff's allegations . . . is that [the]

---

[8]     Mr. Ke misconstrues the requirement that there be physical injury or property damage for the doctrine to not apply.  He cites to the physical damage to his van as proof.  But he does not—nor can he— allege that *Defendants'* alleged negligence caused the damage to his car, as would be required to avoid the economic loss doctrine applying.

He also vaguely alleges for the first time that "his driving record was smeared." Am. Compl. ¶ 182. The Court is left to assume that Mr. Ke attributes whatever damage to his record was done by Defendants. But Mr. Ke does not allege that Defendants' negligence and/or recklessness in processing his insurance claim caused his driving record to be "ruin[ed]."  Moreover, Mr. Ke claims only economic damages.  He

Defendant has not fulfilled its obligations under the insurance contract," the economic loss doctrine bars recovery for that failure." *Id.* at 721 (granting motion to dismiss claims that insurer failed to conduct an adequate investigation and committed various acts of misconduct while negotiating the dispute as barred by the economic loss doctrine).

The narrow exception to the economic loss doctrine for negligence claims does not apply here either. That exception applies in "cases where information is negligently supplied by one in the business of supplying information, such as an architect or design professional, and where it is foreseeable that the information will be used and relied upon by third persons." *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 285 (Pa. 2005). Most courts have interpreted *Bilt-Rite* as limited to negligent misrepresentation claims under Section 552 of the Restatement (Second) of Torts (1977). *Am. Stores Properties, Inc. v. Spotts, Stevens & McCoy, Inc.*, 648 F. Supp. 2d 707, 715 (E.D. Pa. 2009) (collecting cases). Although such a claim could theoretically arise where an insurance agent offered information about policies for his own pecuniary gain, *Durkey v. Pac. Life Ins. Co.*, No. CV 17-317, 2017 WL 8941225, at *4 (W.D. Pa. Aug. 4, 2017), that is not the case here. Mr. Ke does not allege negligent misrepresentation by either defendant. The operative allegations for the negligence claims are instead intertwined with Mr. Ke's breach of contract claim.

Thus, the remaining three counts are undermined by the economic loss doctrine as well as by the gist of the action doctrine.

---

does not request that his driving record be corrected. *Vaughan v. State Farm Fire & Cas. Co.*, No. CIV.A. 14-1684, 2014 WL 6865896, at *5 (E.D. Pa. Dec. 3, 2014) (dismissing claim alleging fraud in the inducement as barred by the economic loss doctrine where plaintiff claimed solely economic damages).

## II.   Motion to Compel

The parties are currently engaged in discovery.  To date, Defendants have produced roughly 700 pages of documents and a privilege log.  In response to Mr. Ke's first set of discovery requests, Defendants primarily objected to the lack of reasonable tailoring of the demands to the insurance claim.[9]

The parties volleyed several rounds of emails which has led to Mr. Ke moving to compel three categories of documents.[10]  During the email campaign, Mr. Ke raised six additional challenges to documents withheld in Defendants' privilege log.[11]  The Court considers both the items requested in the motion to compel as well as the challenges to the log raised in subsequent correspondence.  For the reasons that follow, the Court grants in part Mr. Ke's motion.

### A.  "First Notice of Loss Snapshot"

Mr. Ke moves to compel production of "the first notice of loss snapshot." Mr. Ke describes this as the document that Liberty Mutual prepared when he called the company's 1-800 number to report the accident.  Defendants respond that they have produced all discoverable materials in their possession, including the file notes which detail the telephone communications between Mr. Ke

---

[9]     Defendants' responses and objections were ten days after the 30-day limit under Rule 34.  Fed. R. Civ. P. 34(b)(2)(A).  Defendants explained that the delay in responding was due to COVID-19-related challenges.

[10]    The Court reminds the parties to consult the Court's Pre-Trial Procedures and Local Civil Rule 26.1(f) which requires the moving party to submit a certification that good faith resolution effort has been made.

[11]    Mr. Ke also accused Defendants of failing to provide verifications to their responses under 18 Pa. C.S.A. § 4904.  Although the Court is sitting in diversity, the Federal Rules of Civil Procedure applies to the parties' conduct in discovery.  As a result, § 4904 does not apply to this action.  Moreover, in their Rule 26.1 certificate, Defendants attest that they have made their statement subject to the penalties of 18 U.S.C. § 1621.

and Liberty Mutual on the date of the accident. But they have not produced this document on the grounds they cannot locate a document labeled as such.

To the extent it is not Defendants' practice to create a document labeled a "first notice of loss snapshot," Defendants are ordered to submit an affidavit or declaration from an appropriate corporate officer at Liberty Mutual stating that such a document does not exist. Defendants are instructed that, in so certifying, they cannot later rely on any such document.

### B.   "Vehicle Recall Notice" and "Total Loss Conditioning Guide"

Mr. Ke moves to compel legible versions of the "vehicle recall notice" and "total loss conditioning guide." Defendants do not contest the relevance of the requested documents, nor do they dispute that the pages produced are illegible. Rather, Defendants respond that they do not have other copies. But Defendants do not state whether they have looked for clean versions of the affected pages. Unsurprisingly, illegible copies of documents are of little use in discovery, so what Defendants have produced is not responsive to Mr. Ke's discovery requests.

Defendants are ordered to replace the flagged pages of the two documents with legible copies. Mr. Ke is entitled to documents produced in readable fashion. If such copies cannot be located after a good faith search, Defendants shall attest to the absence of legible versions. As with the "first notice of loss snapshot," Defendants are advised that they cannot later rely on the information in those illegible pages if they are not produced to Mr. Ke.

### C.   Unredacted Documents from Third-Party Driver

Mr. Ke also seeks unredacted versions of documents regarding the third-party claim filed by Jared Grossman, another driver who was involved in the accident. Mr. Ke asserts that because Mr. Grossman was also involved in the accident, "any information about him is discoverable and may well turn into probative evidence." In his reply, he adds that Mr. Grossman's car was repaired

by Liberty Mutual so the repair cost may show why the compensation offered him was unreasonable.

Defendants object to this request as irrelevant to the matter involving Mr. Ke's disputed first-party insurance claim with Liberty Mutual and the assessment provided by Mr. Guess. First, Mr. Grossman is not a party to the lawsuit. Second, whatever third-party claim Mr. Grossman filed for damage sustained to his own vehicle is a separate and distinct insurance claim. So it has no bearing on whether Liberty Mutual complied with the terms of Mr. Ke's policy and whether Defendants determined Mr. Ke's van was a total loss.

In the light of the Court's ruling on the motion to dismiss and claims that survive,[12] discovery into Mr. Grossman's claim would not yield relevant information. The Court is informed here by district courts in this Circuit that have similarly denied motions to compel discovery of other insureds' claims because such information is not relevant to the first-party claim. *See, e.g.*, *Adams v. Allstate Ins. Co.*, 189 F.R.D. 331, 333 (E.D. Pa. 1999) (denying motion to compel discovery of past claims in bad faith action against insurer); *Barnard v. Liberty Mut. Ins. Corp.*, No. 3:18-CV-01218, 2019 WL 461510, at *7 (M.D. Pa. Feb. 6, 2019) (same); *Zettle v. Am. Nat'l Prop. & Cas. Co.*, 2012 WL 2359962, at *1 (W.D. Pa. June 20, 2012) (same);

Liberty Mutual based its offer of settlement on the value of Mr. Ke's van and the damage sustained to it as a result of the accident. The way Liberty Mutual dealt with Mr. Grossman's claim is not relevant because the two cars were obviously not the same, nor is there an allegation that the respective policies and coverage were the same. Thus, the Court will deny Mr. Ke's motion to compel unredacted documents relating to Mr. Grossman's third-party claim.

---

[12]   Three counts survive following the motion to dismiss: Count I (Breach of Contract), Count IV (Unjust Enrichment), and Count VII (Violation of the "catch-all" provision of the UTPCPL).

21

### D. Subsequent Challenges to Privilege Log

Mr. Ke's motion to compel was limited to the foregoing three categories of documents. In subsequent correspondence, he raised additional challenges to documents withheld in Defendants' privilege log.[13] He did not challenge specific documents listed on the log but rather took issue with the categories themselves. Defendants maintain that none of the new requests are discoverable. The Court has considered the nature of the challenges and agrees with Defendants.[14]

Defendants are entitled to withhold their internal documents regarding receipt of this lawsuit and their log notes and communications with counsel regarding this lawsuit. This information is quintessentially protected under attorney client privilege and the work-product doctrine. *Pelullo v. Chubb Grp. of Ins. Cos.*, No. CV 09-4136, 2010 WL 11710629, at *3 (E.D. Pa. Apr. 6, 2010) ("[N]otes memorializing confidential communications with counsel . . . are protected by the attorney-client privilege . . . .").

To the extent Mr. Ke requests non-privileged documents attached to emails between Defendants and their legal counsel, Defendants represent that the only attachment was a copy of Mr. Ke's complaint, which Defendants produced (and of which Mr. Ke was in possession). The emails themselves are withheld under attorney-client privilege, work-product and post-litigation doctrines. As the Court has previously instructed, Defendants can attest in their affidavit that they have produced the only document that was attached to those emails, so this request is moot.

---

[13]     Mr. Ke has taken the (incorrect) position that because Defendants identified the documents withheld under attorney-client or work-product privileges, "they ought to be discoverable." Mr. Ke appears to confuse documents withheld because of privilege with documents that are discoverable but ultimately inadmissible.

[14]     Given the nature of the challenges to the log, the Court determined that an *in camera* review Defendants' files was not necessary.

Defendants are not required to produce their internal underwriting documents where they have produced the insurance policy at issue and the parties do not dispute that Mr. Ke's van carried collision coverage under the policy on the date of loss. Liberty Mutual's underwriting file is not privileged. But it is irrelevant to determining Mr. Ke's breach of contract claim and the scope of coverage under the policy.

Mr. Ke has not articulated a theory of relevance to justify production of these materials when this remains a straightforward coverage determination. Nor has Mr. Ke not brought any claims relating to the underwriting of his policy or alleged ambiguity relating to the policy. *See, e.g., Query v. Lexington Ins. Co.*, 15-21951-CIV, 2015 WL 12434326, at *2 (S.D. Fla. Nov. 19, 2015) (denying motion to compel underwriting where there were no allegations of ambiguity in policy or improper underwriting practices); *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 702 (S.D. Fla. 2007) (same). Accordingly, the Court will not compel production of the documents listed on the privilege log at this time.

CONCLUSION

For the reasons set out in this Memorandum, the Court grants in part Defendants' motion to dismiss and grants in part Mr. Ke's motion to compel. An appropriate Order follows.

BY THE COURT:

_____

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE